IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-02501-WYD-KLM

RAYMOND WAGNER,

    Plaintiff,

v.

STEVE HARTLEY,
TRAVIS TRANI,
JAMES FOX,
ROBERT KAHANIC,
ANTON EVANS,
SUSAN BUTLER,
SHERWYN PHILLIPS,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The original motion was filed on January 31, 2011 [ECF No. 8]. Shortly thereafter, Plaintiff filed an Amended Complaint. Defendants then filed an identical, amended motion to dismiss on April 18, 2011 [ECF No. 21]. Plaintiff filed a response to the original motion on March 24, 2011 [ECF No. 15], and a supplemental response on May 14, 2011 [ECF No. 22]. No reply was filed.

II.    <u>BACKGROUND</u>

This is a 42 U.S. C. § 1983 prison inmate civil rights case. Plaintiff, Raymond Wagner, is an inmate in the Colorado Department of Corrections at the Limon

Correctional Facility ("LCF"). He brings this suit against the Warden, Associate Warden, and several other prison officials at LCF. According to the Amended Complaint, Plaintiff alleges that when he refused to perjure himself by giving testimony favorable to the prosecution in a case involving the murder of a LCF inmate, prison officials retaliated against him by removing him from the general population and placing him in Punitive Administrative Segregation ("Ad-Seg") on December 7, 2008. Plaintiff remained in Ad-Seg until December 3, 2008.

Plaintiff's initial Ad-Seg hearing took place on December 27, 2007. At that hearing, Department of Corrections ("DOC") officials accused Plaintiff of introducing contraband into LCF. Plaintiff alleges that even though no evidence was presented at the hearing in support of this allegation, the Hearing Board, comprised of Defendants Kahnic and Evans, ordered Plaintiff confined to Ad-Seg.

Plaintiff filed a timely appeal on or about January 7, 2008, and the decision of the Hearing Board was vacated and a second Ad-Seg hearing was scheduled. Plaintiff alleges that at the second Ad-Seg hearing, DOC officials again accused him of introducing contraband. The evidence presented at the hearing was in the form of testimony from Defendant Fox who testified that a quantity of tobacco was discovered in the 'toys for tots' factory at LCF, that he had viewed a J-Pay data link showing that family members and friends of other inmates had placed funds in Plaintiff's account, and that a UPS long showed a package delivered to Plaintiff at LCF. Plaintiff denied these allegations and neither the J-Pay data link nor the UPS log were introduced as evidence during the hearing. Nevertheless, the Hearing Board again ordered Plaintiff confined to Ad-Seg.

Plaintiff contends that he attempted to file a grievance concerning the Ad-Seg proceedings, but was informed by his case manage that the grievance process could not be utilized because Ad-Seg proceedings could only be addressed through the appeal process for classification issues.   Plaintiff then filed an appeal of the second Ad-Seg hearing, asserting that the decision was supported by insufficient evidence and that DOC procedures and regulations were not followed.   The appeal was denied on March 12, 2008.

On April 3, 2008, Plaintiff again challenged the decision to place him in Ad-Seg by filing a complaint in State Court based on Colo. R. Civ. P. 106[1].   On October 17, 2008, the state court ruled that Defendants had violated Plaintiff's constitutional right to due process, and remanded the case to the DOC for a new Ad-Seg hearing.   At that third hearing, the Hearing Board found that there was insufficient evidence to support the allegations against Plaintiff and concluded that Plaintiff could not be subjected to Ad-Seg. This decision was affirmed on November 12, 2008.   Plaintiff was ultimately released from Ad-Seg on December 3, 2008, when he was transferred to Arkansas Valley Correctional Facility as a medium security inmate.

Plaintiff alleges that while in Ad-Seg, he was confined to his cell for all but a few hours a week, subjected to 24-hour-a-day lighting, denied personal privacy, denied access to outdoor recreation, denied contact, fellowship and society of his peers, and was unable to maintain adequate personal hygiene.   Plaintiff contends that due to the isolation, he was deprived of mental stimulation causing his mental health to be severely

---

[1] Colo. R. Civ. P. 106(a)(4) provides relief in Colorado courts "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."

compromised. He further asserts that he was unable to obtain sufficient exercise to remain physically healthy, and suffered repeated and severe migraines due to the lack of exercise and fresh air. Essentially, he alleges that the conditions in Ad-Seg imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life.

All of the named Defendants are alleged to have participated in the classification hearings that led to his placement in Ad-Seg. Plaintiff alleges that Defendants' conduct during the classification hearings violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.[2] He brings suit against the Defendants in their individual capacities and seeks damages, attorneys' fees, costs, and a declaration that his constitutional rights were violated.

III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient

---

[2] The caption of Plaintiff's "Claim For Relief" in his Amended Complaint recites violations of Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. In the body of the Amended Complaint, he alleges violations of his rights under the Fourth, Fifth, *Sixth*, Eights, and Fourteenth Amendments. See Amended Complaint at ¶ 33. However, in response to the Motion to Dismiss, Plaintiff states that he has not asserted any separate claim involving denial of access to the courts. *See* Response [ECF No. 15] at p.8. Therefore, I do not construe Plaintiff's Amended Complaint as alleging a Sixth Amendment violation. In addition, I note that prisoners possess no Sixth Amendment rights in connection with prison disciplinary proceeding. *See Teague v. Hood*, 2008 WL 2228905 (D. Colo., May 27, 2008) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 321-23 (1976)).

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Such conclusory allegations are "not entitled to the assumption of truth." *Id.* at 1950.

IV.  ANALYSIS

   A. Statute of Limitations

Defendants first move to dismiss Plaintiff's claims as untimely. While the statute of limitations is an affirmative defense, if it is clear from the complaint that the right to bring an action has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009) (noting that "once a defendant satisfies his initial burden to show that a claim is untimely, the burden

shifts to [the p]laintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date").

Statute of limitations periods in section 1983 suits are determined by reference to the personal-injury statute of the state in which the federal district court sits.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  Federal law, however, determines the date on which the claim accrues and the limitations period starts to run.  *Id.*  In Colorado, the general statute of limitations for personal injury claims provides that such a claim must be brought within two years after the action accrues.  *See* C.R.S. § 13-80-102.  "A civil rights action accrues when facts that would support a cause of action are or should be apparent."  *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995).

Defendants contend that "the gravamen of Wagner's complaint is that he was reclassified as an administrative segregation inmate in violation of his constitutional rights," and that he was "removed from [the] general population and housed in administrative segregation beginning on December 8, 2007."  Defendants assert that Plaintiff's claims accrued when he was served with papers setting classification hearings in December 2007.  Because Plaintiff did not file the complaint in this case until October 13, 2010, almost three years after he was removed from the general population, Defendants maintain that his claim is time barred.  Plaintiff does not dispute that a two-year statute of limitations applies to his claims, but asserts that the limitation period "did not even [begin to] accrue until he exhausted his administrative remedies on November 12, 2008," within two years of Plaintiff filing the complaint, that the continuing violation doctrine tolls his Eighth Amendment claim, and that the doctrine of equitable

tolling applies to the facts of this case.[3]

I find that Plaintiff's claims accrued on December 27, 2007, when Defendants first convicted him of a disciplinary offense and ordered that he be housed in Ad-Seg. Colorado's two year statute of limitations expired in December, 2009.   Therefore, his claims are time-barred unless the applicable limitations period was sufficiently tolled.

Under Colorado law, equitable tolling is applied in two distinct situations: (1) when "defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner;" and (2) when "truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts."  *Noel v. Hoover,* 12 P.3d 328, 330 (Colo. App. 2000); *see also Brodeur v. American Home Assur. Co.,* 169 P.3d 139, 149 (Colo. 2007) ("The statute of limitations may be equitably tolled where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner. . . .   Other jurisdictions have applied equitable tolling where 'extraordinary circumstances' make it impossible for the plaintiff to file his or her claims within the statutory period."); *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096-97 (Colo. 1996).   In practice, however, Colorado courts rarely allow equitable tolling.   *Escobar,* 668 F. Supp. 2d at 1272.

---

[3] To the extent Plaintiff asserts that his claims did not accrue until the Colorado state court invalidated his disciplinary conviction under the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), I reject this contention. While *Heck* delays the accrual of certain causes of action until the conviction or sentence at issue has been invalidated, it relates only to claims which "necessarily implicate the fact or duration of" a prisoner's confinement.   See *Horton v. Zavaras*, 2010 WL 3341259 *6 (D. Colo., June 11, 2010) (citing *Torres v. Fauver*, 292 F.3d 141, 145 (3d Cir. 2002); *see also Edwards v. Balisok*, 520 U.S. 641 (1997) (extending *Heck* to prison disciplinary convictions that deprive a prisoner of good time credits).   Because Plaintiff's allegations do not implicate the duration of his sentence, I find that the holding in *Heck* does not apply to the facts of this case.   See *Slack v. Jones*, 348 Fed. Appx. 361, 364 (10th Cir., Oct. 5, 2009).

As an initial matter, I reject Plaintiff's assertion that equitable tolling should apply to all of his claims for the period in which he was in Ad-Seg because he was kept in a cell twenty-three hours a day and had restricted access to the law library, law clerks, and prison lawyers.   While a plaintiff's confinement in segregation might be the type of extraordinary circumstances that would permit equitable tolling, I find that equitable tolling based solely on Plaintiff's placement in Ad-Seg is not appropriate in this case.   Here, Plaintiff filed two internal appeals and successfully pursued a state Rule 106 proceeding while he was in Ad-Seg.   These facts weigh heavily against Plaintiff's argument that placement in Ad-Seg prevented him from filing his claims.   *See Fogle v. Slack*, 419 Fed. Appx. 860, 865 (10th Cir. 2011) (rejecting plaintiff's request for equitable tolling where he made several court filings, despite placement in administrative segregation).

However, Under the Prison Litigation Reform Act ("PLRA"), a prisoner is required to exhaust all available administrative remedies prior to filing this suit in federal court.   42 U.S.C. § 1997e(a).   Accordingly, the PLRA's exhaustion requirement could constitute a circumstance "mak[ing] it impossible for [a] plaintiff to file his [ ] claims within the statutory period," thus entitling a plaintiff to equitable tolling, "so long as the plaintiff makes good faith efforts to pursue the claims when possible."   *See Dean Witter*, 911 P.2d at 1097. Although the Tenth Circuit does not appear to have addressed this issue, a majority of other circuit courts that have decided this issue have concluded that "the statute of limitations applicable to a § 1983 action must be tolled while a prisoner completes this mandatory administrative remedy exhaustion process."   *Smith v. Ortiz*, 2006 WL 620871, at *4 (10th Cir. Mar. 14, 2006) (citing cases).

In the Amended Complaint Plaintiff alleges that following his initial classification

into Ad-Seg he filed two timely appeals and initiated a state Rule 106 proceeding. He further alleges that he attempted to file a Step I Grievance, but his case manager informed him that the Grievance process could not be utilized to challenge the Ad-Seg proceedings. Thus, Plaintiff's internal appeals and his state court Rule 106 proceeding appear to be the only course of action available to review the disciplinary proceeding at issue.

I find that Plaintiff's claims should be tolled while he exhausted his administrative remedies. *See Smith*, *supra.* At this stage of the proceedings, and in the absence of any reply from Defendants on this issue, I will assume that this exhaustion requirement includes the requirement that Plaintiff bring a Rule 106 proceeding. However, even assuming that Plaintiff did not exhaust his administrative remedies until the conclusion of his state court Rule 106 proceeding, this would only toll the statute of limitations with respect to Plaintiff's due process claim. This is because the very nature of the administrative remedies pursued by Plaintiff would have concerned only a review of Plaintiff's disciplinary proceeding, not the conduct underlying his remaining claims challenging the conditions in Ad-Seg. *See Wood v. Milyard*, 2010 WL 1235653 at * 9 (D. Colo., Jan. 6, 2010).

Therefore, I find that the statute of limitations was tolled with respect to Plaintiff's due process claim until October 17, 2008, the date state court ruled that Defendants had violated Plaintiff's constitutional right to due process, and remanded the case to the DOC for a new Ad-Seg hearing. Because Plaintiff filed his initial Complaint on October 13, 2010, his due process claim is timely.

Plaintiff nevertheless asserts that, with respect to his Eighth Amendment claim, the

doctrine of continuing violation applies. "The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994). Contrary to Plaintiff's assertions, the Tenth Circuit has yet to decide whether the continuing violation doctrine applies to claims brought under § 1983. *Id.*; *see also Brock v. Herbert*, 2011 WL 3154230, at *4 n.5 (10th Cir. July 27, 2011); *Fogle*, 419 Fed. Appx. at 864. Here, the allegations surrounding Plaintiff's placement in Ad-Seg involve discrete events, and not a pattern of continuing misconduct. Therefore, I decline to extend the continuing violation doctrine to the facts of this case.

B. Due Process Claim

I now turn to Defendants' assertion that Plaintiff's due process claim fails as a matter of law. Plaintiff appears to allege a due process claim under both the Fifth Amendment and the Fourteenth Amendment.[4] I note that the Fifth Amendment is applied to the states through the Fourteenth Amendment, which prohibits states from depriving citizens of liberty without due process of law. "Although their due process rights are defined more narrowly, that guarantee applies to prisoners as well." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). To state a Fourteenth Amendment due process claim, a plaintiff must allege details that satisfy two elements. *Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest; and second, he must show he was not afforded an

---

[4] I do not construe Plaintiff's Amended Complaint as alleging a separate Fifth Amendment violation based on the Self-Incrimination Clause, as Defendants suggest in their Response. In any event, such claim would be barred by the applicable statute of limitations as set forth above.

appropriate level of process. *Bartell*, 263 F.3d at 1149.

As Defendants correctly assert, mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996). However, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court concluded that a prisoner is entitled to due process before he is subjected to conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." A determination of what constitutes an atypical and significant hardship necessarily includes consideration of the totality of the conditions in question, and whether those conditions are a dramatic departure from what would be expected of a person serving a similar sentence. This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; (3) inevitably increases the duration of a prisoner's sentence; (4) is for an indefinite term; and (5) furthers a legitimate interest. *See Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 1007).

Plaintiff does not specifically allege that the administrative segregation to which he was subjected differs from other types of segregation, but considering his allegations as a whole, he alleges that the segregation differs significantly from conditions in the general population. In addition, while Plaintiff does not contend that the length of his sentence has been impacted or that his placement was for an indefinite term, construing the allegations in favor of Plaintiff, it appears that the length of his segregation is undefined. Finally, Plaintiff asserts that he is not guilty of the misconduct alleged at his classification hearings, and that his placement in Ad-Seg was done in retaliation for his testimony in a

murder case.   Taking these allegations as true, Plaintiff's placement in administrative segregation could not have furthered any legitimate interest.   Thus, Plaintiff has alleged that his placement in Ad-Seg was a dramatic departure from what would be expected of a person serving a similar sentence.   *See DiMarco*, *supra*.

In addition, I note that in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court held that prisoners placed in administrative segregation in Ohio's super maximum prison had a liberty interest not to be confined in the super maximum prison without first receiving appropriate due process protections. *Wilkinson*, 545 U.S. at 213-15, 220-24. Many of the conditions at issue in *Wilkinson* are similar to those alleged in this case including (1) limited human contact; (2) confinement for all but a few hours a week; (3) confinement with the lights on for twenty-four hours a day; (4) limited or no access to outdoor recreation; (5) limited visitation and communication with family and friends; and (6) indefinite placement in segregation with limited opportunity for review.

Therefore, construing the allegations in the Amended Complaint in the light most favorable to Plaintiff, I find that he has alleged a protected liberty interest.

As to whether he received sufficient process, Plaintiff has alleged that his placement in Ad-Seg was completed arbitrary, based on little or no evidence of any disciplinary infraction, and done in retaliation for his testimony in a criminal case.   As a general rule, before officials may take actions that affect a protected liberty interest, they must afford a prisoner notice and an opportunity to be heard.   *Wilson*, 430 F.3d at 1117. In addition, the decision must be supported by some evidence.   *Id.*   Here, Plaintiff has alleged that the decision to place him in Ad-Seg was based on insufficient evidence and that Defendants failed to follow the procedures set forth in DOC regulations at his

classification hearings.

Giving Plaintiff the benefit of all favorable inference, he may be able to demonstrate that his arbitrary and retaliatory placement in Ad-Seg for nearly one year imposed an atypical and significant hardship in relation to the ordinary incidents of prison life under *Sandin* and *Wilkinson*, *supra*, and that he was denied sufficient due process prior to placement. Accordingly, dismissal of this claim is not appropriate at this time.

### C. PLRA

Defendants next assert that because Plaintiff fails to allege any physical injury, his claim for compensatory damages fails as a matter of law. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA bars compensatory damages for mental and emotional injuries suffered by a prisoner (regardless of the nature of the right asserted) in the absence of physical injury.

Here, Plaintiff has alleged that he suffered physical injuries in the form of muscle atrophy, joint pains and aches, and repeated and severe migraine and/or other headaches due to the lack of exercise, lack of fresh outdoor air, and the mental and emotional stress from isolation and his fear that the arbitrary and capricious retaliation would continue. Defendants contend that these injuries are *de minimis*, and do not alleged the requisite "physical injury" under the PLRA. I disagree. At this stage of the proceedings I must accept all allegations in the Amended Complaint as true and construe these allegations in the light most favorable to the Plaintiff. In so doing, I find that Plaintiff has alleged sufficient physical injury under the PLRA. I cannot conclude, based on the

Amended Complaint, that Plaintiff's allegations of severe and frequent headaches are merely a *de minimis* injury as a matter of law.   Therefore, Defendants request for dismissal of Plaintiff's claim for compensatory damages is denied at this time.

### D.  Qualified Immunity

Next, I address Defendants contention that they are entitled to qualified immunity.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.   *Harlow* places a presumption in favor of immunity of public officials acting in their individual capacities. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990).

Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct."   *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir 1995)). Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the prongs in the test in any order.   *See Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

A plaintiff cannot defeat a defense of qualified immunity merely by alleging a violation of "extremely abstract rights."   *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).   Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized sense."   *Id.* at 640.   "'To be clearly established,

'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (quotation omitted); *see also Snell v. Tunnell*, 920 F.2d 673, 696 (10th Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), *cert. denied*, 111 S.Ct. 1622 (1991). Ordinarily, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). This requires "'some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts in question in this case. *Calhoun v. Gaines*, 1992 WL 387385 at 4 (10th Cir. 1992).

The defense of qualified immunity can be asserted at different junctures in a case. When it is raised in the context of a motion to dismiss, I consider only the allegations in the Complaint. With respect to Plaintiff's due process claim, I have found that Plaintiff has sufficiently pled a due process violation under *Sadin v. Conner*, 515 U.S. 472 (1995). In addition, as discussed above, at the time of Plaintiff's placement in Ad-Seg , and throughout the duration, it was clearly established that placement in similar conditions, without appropriate procedural safeguards, is not constitutionally permissible. *See Wilkinson*, 545 U.S. at 224-27; *Wilson*, 430 F.3d at 1117. Therefore, Defendants' claim that they are entitled to qualified immunity is denied at this time.

V. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(6), filed April 18, 2011 [ECF No. 21], is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** with respect to Plaintiff's claims under the Fourth, Sixth and Eighth Amendments, and it is **DENIED** with respect to Plaintiff's Due Process Claim.

Dated:   March 30, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge