IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  10-cv-02501-WYD-KLM

RAYMOND WAGNER,

      Plaintiff,

v.

STEVE HARTLEY;
TRAVIS TRANI;
JAMES FOX;
ROBERT KAHANIC;
ANTON EVANS;
SUSAN BUTLER; and
SHERWYN PHILLIPS,

      Defendants.

---

## ORDER ON SUMMARY JUDGMENT

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendants' Motion for Summary

Judgment filed May 18, 2012.  Defendants seek summary judgment on the only

remaining claim in this case for procedural due process related to the removal of

Plaintiff, a convicted felon, from the general population at Limon Correctional Facility

["Limon"] and placement in punitive administrative segregation.  A response to

Defendants' motion was filed on August 3, 2012, and a reply was filed on August 17,

2012.  For the reasons discussed below, Defendants' motion is denied.

I note by way of background that the case is alleged to arise from a murder

prosecution by the Arapahoe County District Attorney's office.  The Amended Complaint

alleges that after Jeffrey Heird was found murdered in his cell at Limon in March 2004, the District Attorney charged Alejandro Perez and David Bueno with murder and sought the death penalty.  (Am. Compl. ¶ 5.)  Plaintiff was identified by the Department of Corrections as an "eyewitness" to the murder.  (*Id.* ¶ 6.)  When Plaintiff testified that he did not witness the murder, he alleges that Defendants then retaliated against him by fabricating evidence and conjuring up false charges, unsupported by any evidence, in order to have an excuse to place him in disciplinary segregation for 360 days.  (*Id.* ¶¶ 6, 33; *see also* Pl.'s Resp. to Defs.' Mot. Summ. J. ["Pl.'s Resp."] at 2-3.)  Plaintiff asserts additionally that Defendants refused to give him notice of the charges or access to the evidence against him (because it did not exist), lied during the administrative hearings regarding the existence of such evidence, and successfully conspired to keep Plaintiff isolated and in disciplinary segregation.  (Pl.'s Resp. at 2-3.)

Plaintiff alleges that Defendants' conduct violated his Fourth Amendment Right to exercise his liberty interest as a general population inmate, his Fifth and Fourteenth Right to not be deprived of this liberty interest without procedural due process of law, and his Eighth Amendment right to be free from cruel and unusual punishment.  By Order of March 30, 2012, all but the procedural due process claim was dismissed as barred by the statute of limitations.  Summary judgment is now sought on this claim.

II.    FACTS

These facts are taken from Defendants' Statement of Material Facts in their motion and Plaintiff's response thereto.  I have only cited to the evidence supporting the factual assertions where it is disputed or where I felt it was necessary.

On or about December 7, 2007, while Plaintiff was serving a sentence at Limon, he was removed from the general population and placed into administrative segregation pending an investigation concerning the smuggling of contraband into Limon. He remained in administrative segregation until December 3, 2008. Defendant Hartley was the acting Warden of Limon and Defendant Trani was the acting Assistant Warden. Defendant Fox was a Lieutenant. Defendants Kahanic, Butler, Phillips and Evans were case managers and acting as hearing board officers.

Defendants assert that Plaintiff was placed in administrative segregation after an internal investigation revealed that he may have been involved in the smuggling of tobacco into Limon. (Defs.' Mot. Summ. J. ["Defs.' Mot."], Ex. A, Bates No. DOC-00142.) Plaintiff asserts in response that there was no evidence that he was involved in the smuggling of tobacco into Limon. In support of this, Plaintiff attaches as Exhibit 1 to his Response his Declaration. The Declaration refers to and attaches a draft prisoner complaint that Plaintiff was going to file pro se before his counsel volunteered to represent him, and states that the facts set forth in that complaint are true and correct.[1]

Following the investigation, on or about December 20, 2007, Plaintiff received a Notice for an Administrative Segregation Hearing set for December 27, 2007. The determination at that hearing was that Plaintiff was involved in a plan to smuggle contraband; namely, tobacco, into Limon. (Defs.' Mot., Ex. A, Bates No. DOC-00144.) Defendants Kahanic and Evans, the classification committee members who participated in the hearing, determined that Plaintiff should be assigned to maximum security,

---

[1] I address the admissibility of this evidence in Section III.B.1, *infra.*

administrative segregation because Plaintiff's acts of introducing contraband into Limon posed a threat to the security and to the safety of staff and offenders. (*Id.*) Again, Plaintiff asserts that no evidence was presented at the hearing in support of this finding.

On January 7, 2008, Plaintiff filed an appeal of the December 27, 2007, decision to place him in administrative segregation. On January 30, 2008, Defendant Trani determined that procedures were not followed during the December 2007 hearing and remanded the case for a new hearing.

On remand, a second hearing was scheduled for February 22, 2008, and Plaintiff received notice of the hearing on February 15, 2008. At the hearing, the classification committee members, Defendants Butler and Phillips, determined that Plaintiff's conduct posed a serious threat to the security of Limon, and the December 27, 2007, decision to place Plaintiff in administrative segregation was affirmed. (Defs.' Mot., Ex. A, Bates No. DOC-00151.) The February 22, 2008, decision was based on Defendant Fox's testimony that Plaintiff was involved in a plan to introduce contraband; namely tobacco, into Limon. Plaintiff denies that any of his conduct posed a serious threat to the security of Limon, and asserts that no evidence was presented at this hearing either.

On March 4, 2008, Plaintiff prepared an appeal of the February 22, 2008, decision. On March 12, 2008, an administrative officer upheld the decision after determining that the procedures set forth in Administrative Regulation 600-02 were followed. (Defs.' Mot., Ex. A, Bates No. DOC-00157.) While Plaintiff admits that the February 2008 decision was upheld, he denies that the procedures in Administrative Regulation 600-02 were followed since no evidence was presented at this hearing.

-4-

Sometime thereafter, Plaintiff filed a complaint against Limon's Warden in Lincoln County District Court, seeking judicial review of a quasi-judicial determination pursuant to C.R.C.P. 106(a)(4) and 106.5.  On October 17, 2008, upon review of the administrative segregation hearing records, the Lincoln County District Court issued an Order vacating Plaintiff's classification for administrative segregation on grounds that the classification committee violated the provisions of Administrative Regulation (AR) 600-02(IV)(K)(1) and AR 600-02(IV)(I)(2) when it failed to admit or consider certain evidence.  The Lincoln County District Court further determined that the classification committee's failures to adhere to provisions of AR 600-02 amounted to an abuse of discretion and, possibly, a due process violation, even though Plaintiff was not seeking relief under 42 U.S.C. § 1983.  The Court ordered that Plaintiff be granted a third classification hearing and that none of the same members who presided at the first two hearings be on the committee of that hearing.

Pursuant to the Lincoln County District Court's order, a third classification hearing was held on or about November 10, 2008, whereupon it was determined that insufficient evidence existed to support the allegations against Plaintiff and to justify Plaintiff's placement in administrative segregation.  This decision was affirmed on November 12, 2008.  Plaintiff was released from administrative segregation on December 3, 2008, and transferred to Arkansas Valley Correctional Facility ["AVCF"].

Defendants cite to a number of medical reports while Plaintiff was in administrative segregation which, while documenting certain medical treatment of Plaintiff, do not contain any notations concerning complaints, or the treatment provider's

observations, of any physical injuries or ailments including, but not limited to, muscle atrophy, joint pains and aches, repeated and severe migraine and/or other headaches, mental or emotional stress, fear, or anxiety.  The records noted, among other things, that Plaintiff "gets on and off the table without difficulty or evidence of discomfort", was "[n]eat and well-groomed", was a "well developed, well nourished male ambulating in cell in no apparent distress" and a "healthy looking male  . . ., able to get up from & ambulate to door well, normal gait . . ., appears well."  They also noted that Plaintiff's "[g]eneral appearance was within normal limits"; that Plaintiff denied having any mental health issues and did not appear to be unusually emotionally upset, anxious, or fearful; and that he did not have any physical injuries or appear to be traumatized.

On December 3, 2008, Plaintiff was medically screened as a new inmate at AVCF.  The medical record from that date does not contain any notations concerning Plaintiff's complaints of, or the treatment provider's observations, of any physical, mental, or emotional conditions related to, or arising from, Plaintiff's lack of outdoor exercise, lack of outdoor air, and isolation while placed in administrative segregation. The form indicates that: (1) bowel inconsistency was the only condition for which Plaintiff is receiving medical treatment; (2) Plaintiff was not being treated for a mental health condition; (3) Plaintiff had no current medical, dental, or mental health complaints; (4) Plaintiff's "[g]eneral appearance was within normal limits"; and (5) Plaintiff did not have any "[v]isible physical deformities."

In response to the medical reports discussed above, Plaintiff asserts that the reports do not mean that he was *not* suffering from migraines or headaches.  Indeed, he

asserts that he was suffering from frequent and severe headaches while in administrative segregation.  Plaintiff asserts in his Declaration that it "was pointless to complain about these headaches that were caused by lack of fresh air and ventilation, because the DOC won't do anything about headaches", so he "complained about the constipation I suffered from as a result of the poor diet and lack of exercise while in segregation."  (Pl.'s Decl. ¶ 3.)

III.    ANALYSIS

A.    Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."  *E.E.O.C. v. Horizon/ CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *Horizon/ CMS Healthcare Corp.*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  The court must "'view the evidence and draw all reasonable inferences therefrom in the light most

favorable to the party opposing summary judgment.'" *Id.* (quotation omitted).  All doubts

must be resolved in favor of the existence of triable issues of fact.  *Boren v. Sw. Bell*

*Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

      B.    Whether Summary Judgment Should Be Granted

          1.    The Admissibility of Plaintiff's Evidence

      Defendants object to the admissibility and authenticity of Plaintiff's Declaration

and the draft pro se complaint he refers to in his Declaration.  By Order of January 10,

2013, I issued an Order directing Plaintiff to either authenticate his submissions or

propose a method for doing so.  As noted therein, Plaintiff's Declaration is not

personally signed by the Plaintiff; instead, there is only an electronic signature.  This is

not appropriate, as an affidavit filed in this Court requires an ink-signed version to be

valid.  (January 10, 2013 Order at 1, ECF No. 44.)  The Order further noted that

unsigned affidavits do not constitute evidence that may be considered by the Court.  (*Id.*

at 1-2.)  Finally, the Order questioned the admissibility at trial of the undated, unsigned

and unsworn pro se complaint attached to the Declaration.  (*Id.* at 2.)

      On January 25, 2013, Plaintiff filed a response to that Order representing that he

will testify at trial as to the factual matters set forth in the Declaration and draft

complaint.  Defendants' reply filed on February 11, 2013, does not raise any further

arguments as to the authenticity or admissibility of the Declaration and draft complaint.

Accordingly, I find that these exhibits should be considered as to the summary judgment

motion.  In actuality, however, I have only needed to consider Plaintiff's Declaration in

deciding the summary judgment motion.

2.      Whether Summary Judgment is Appropriate on the Merits of the
Due Process Claim

I now turn to whether Defendants are entitled to summary judgment on the

remaining claim.  To succeed on a procedural due process claim, a plaintiff must prove

two elements:  first, that he possessed a constitutionally protected liberty or property

interest such that due process protections are applicable, and second, that he was not

"afforded an appropriate level of process."  *Copelin-Brown v. N.M. State Pers. Office,*

399 F.3d 1248, 1254 (10th Cir. 2005); *Bartell v. Aurora Pub Schs*., 263 F.3d 1143, 1149

(10th Cir. 2001).  Defendants argue that Plaintiff cannot satisfy either element.

I first address whether Plaintiff possesses a constitutionally protected liberty

interest in connection with his placement in administrate segregation.  As noted in my

Order on Defendants' Motion to Dismiss, mere placement in administrative segregation

does not, on its own, implicate a liberty interest.  (Order of March 30, 2012, ECF No. 30,

at 11) (citing *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996)).  The question of

whether an inmate has a protected liberty interest in connection with his placement

turns on whether the inmate has suffered an atypical and significant hardship in relation

to the ordinary incidents of prison life.  *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).

"[T]he touchstone of the inquiry into the existence of a protected, state-created

liberty interest in avoiding restrictive conditions of confinement is not the language of

regulations regarding those conditions but the nature of those conditions themselves 'in

relation to the ordinary incidents of prison life.'"  *Wilkinson v. Austin*, 545 U.S. 209, 223

(2005)  (quoting *Sandin*, 515 U.S. at 484).  This inquiry requires "identifying the baseline

from which to measure what is atypical and significant in any particular prison system."
*Id.*

In *Sandin*, the Supreme Court held that "Connor's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest", as it did not "present a dramatic departure from the basic conditions of [the inmates'] sentence." 515 U.S. at 485. Thus, it did "not exceed similar, but totally discretionary, confinement in either duration or degree of restriction." *Id.* at 485-86. Conner's situation also did not "present a case where the State's action will inevitably affect the duration of his sentence." *Id.* at 487. On the other hand, in *Wilkinson*, the Supreme Court found that Ohio's supermax placement would impose an "atypical and significant hardship under any plausible baseline." 545 U.S. at 223. This placement implicated a prisoner's liberty interest because it was for an indefinite duration reviewed only annually, and it disqualified an otherwise eligible inmate from parole consideration. *Id.* at 224.

The Tenth Circuit provided further clarification on how to determine whether a liberty interest is implicated in *Estate of DiMarco v. Wyo. Dep't of Corrections,* 473 F.3d 1334 (10th Cir. 2007). There, the court was asked to address the issue of the appropriate baseline comparison and how significant the conditions of confinement had to be to deviate from the baseline to create a liberty interest in connection with placement into administrative segregation. Rather than adopt "a rigid either/or assessment", the Tenth Circuit held it made sense "to look at a few key factors." *Id.* at 1342. These "factors might include whether (1) the segregation relates to and furthers a

legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson;* and (4) the placement is indeterminate (in *Wilkinson* the placement was reviewed only annually)." *Id.*  It was noted, however, that "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

In the case at hand, I have insufficient evidence to determine the baseline from which to measure what is atypical and significant in Limon.  That is because Defendants presented no facts or evidence to show how Plaintiff's confinement in administrative segregation compared to placement in the general population in Limon.  Without such facts, it is impossible to determine whether Plaintiff's conditions of confinement were extreme or whether they imposed a significant and atypical hardship on the Plaintiff. Defendants also presented no facts or evidence on the issue of whether Plaintiff's confinement in administrative segregation was indeterminate.  This is problematic since I found in the Order on the Motion to Dismiss that Plaintiff's allegations showed a plausible claim that Plaintiff's administrative segregation differed significantly from conditions in the general population and that Plaintiff's confinement was for an indefinite term.  (Order of March 30, 2012, at 11.)  Indeed, I noted that the conditions alleged in the Amended Complaint are similar to those in the *Wilkinson* case "including (1) limited human contact; (2) confinement for all but a few hours a week; (3) confinement with the lights on for twenty-four hours a day; (4) limited or no access to outdoor recreation; (5)

limited visitation and communication with family and friends; and (6) indefinite placement in segregation with limited opportunity for review.  (*Id.* at 12.)

I also note that while Defendants provided evidence that Plaintiff was placed into administrative segregation pending an investigation into the possession of dangerous contraband (see form entitled "Colorado Department of Corrections Removal from Population" attached to Ex. A to Defendants' Mot.), they did not address why this placement as compared to some other form of placement was required in terms of a legitimate penological interest such as safety or rehabilitation.  Evidence was required on this issue given my findings in the March 30, 2012, Order that, taking Plaintiff's "allegations as true, Plaintiff's placement in administrative segregation could not have furthered any legitimate interest" since Plaintiff contends he was not guilty of the alleged misconduct and that his placement in administrative segregation was done in retaliation for his testimony in a murder case.  (Order of March 30, 2012, at 11-12.)

The Supreme Court has made clear that "a party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Indeed, the moving party has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Relevant to this case, "the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact."  *Id.*  While Defendants point to the lack of evidence

offered by Plaintiff, the nonmoving party is required "to set forth specific facts showing there is a genuine issue for trial" only after the moving party has met its burden *Id.* Here, Defendants did not meet their burden of presenting evidence to show the absence of a genuine issue of material fact in connection with their argument that a liberty interest is not implicated, and Plaintiff was thus not required to present evidence to support his claim.  Accordingly, summary judgment on this issue is not appropriate.

I also note that if a liberty interest is found to exist in this case, the Court must determine (1) the appropriate procedural protections due to the inmate to prevent arbitrary abrogation of the liberty interest, and (2) whether the inmate was afforded those protections.  *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Again, I find the evidence and briefing on this issue inadequate.  While Plaintiff appears to have been provided notice and a hearing as well as a written statement of the decision, he alleges that Defendants denied him access to the evidence against him and/or did not present any evidence to substantiate the claims, did not allow him a reasonable opportunity to respond to the allegations, and did not adjudicate his claims before non-biased hearing officers.[2]  Again, Defendants did not meet their burden of showing either that Plaintiff was not entitled to these due process protections or the absence of a genuine issue of material fact through the presentation of evidence.  Accordingly, summary judgment is also not appropriate on this issue.  Further, Defendants have not shown they are entitled to qualified immunity.

---

[2]   Contrary to Defendants' assertion, this claim goes well beyond an argument that Defendants merely failed to comply with the provisions of Administrative Regulation 600-02.

3.    Whether Plaintiff's Declaratory Judgment Claim is Moot

"Under Article III of the United States Constitution, federal courts may adjudicate only 'cases or controversies.'" *Wirsching v. Colo.*, 360 F.3d 1191, 1196 (10th Cir. 2004). As a result, a court must "'decline to exercise jurisdiction where the award of any requested relief would be moot-i.e. where the controversy is no longer live and ongoing.'" *Id.* (quoting *Cox v. Phelps Dodge Corp.,* 43 F.3d 1345, 1348 (10th Cir.1994)). "'The touchstone of the mootness inquiry is whether the controversy continues to touch the legal relations of parties having adverse legal interests in the outcome of the case,' and this legal interest must be 'more than simply the satisfaction of a declaration that a person was wronged.'" *Id.* (quoting *Cox*, 43 F.3d at 1348) (internal quotation marks and further quotation omitted). Where, as here, "a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011).

In the case at hand, it is undisputed that Plaintiff's procedural due process claim relates to his placement into administrative segregation. It is also undisputed that he has been released from such segregation. Thus, there does not appear to be a live controversy, as "'the entry of a declaratory judgment would amount to nothing more than a declaration that he was wronged.'" *Wirsching*, 360 F.3d at 1196 (quoting *Green v. Branson*, 360 F.3d at 1196)).

Further, a "plaintiff cannot maintain a declaratory . . . action unless he or she can demonstrate a good chance of being likewise injured [by the defendants] in the future."

*Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). Defendants have presented

evidence that Plaintiff is now serving time at a Massachusetts Department of

Corrections facility for convictions in that state. While Plaintiff has shown that his

Colorado sentence has not yet been discharged, it appears highly unlikely that he would

be returned to Colorado or the Limon facility prior to the discharge date. Indeed,

Defendants present evidence that Plaintiff's Colorado sentence discharge date is

presently calculated as December 21, 2015. (Defs.' Reply, Ex. E.) Plaintiff will not

become parole eligible until December 1, 2015, in connection with his Massachusetts

sentence, and his mandatory release date is December 1, 2021. Accordingly, I agree

that Plaintiff's declaratory judgment claim is moot. *See Jordan*, 654 F.3d at 1030

(noting that declaratory relief against individual defendants would have no effect

because the plaintiff is no longer incarcerated in the facility where the individual

defendants work); *see also McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360, 1363

(11th Cir. 1984) (stating that, as a general rule, a prisoner's transfer or release from a

jail moots his individual claim for declaratory and injunctive relief, regardless of whether

the prisoner could be returned to the jail in the future).

Plaintiff's claim for damages is not, however, moot. *Wirsching*, 360 F.3d at 1196.

Despite Plaintiff's release from administrative segregation, that claim "'remain[s] viable

because a judgment for damages in his favor would alter the defendants' behavior by

forcing them to pay an amount of money they otherwise would not have paid.'" *Id*.

Thus, I address that claim below.

    4.    <u>Whether Summary Judgment is Proper as to Plaintiff's Claims for</u>
<u>Compensatory and Punitive Damages</u>

Pursuant to the Prison Litigation Reform Act ["PLRA"], 42 U.S.C. § 1997e(e), an inmate cannot sue for compensatory damages without evidence of physical injury. *Perkins v. Kan. Dep't of Corrs.* 165 F.3d 803, 807-08 (10th Cir. 1999).  Defendants argue that while Plaintiff alleges that he suffered physical injuries during his administrative segregation, including severe headaches, the medical records do not support Plaintiff's allegations.  Therefore, Defendants assert that Plaintiff has not and cannot demonstrate that he has suffered a physical injury as a result of his year-long placement in administrative segregation.

I reject Defendants' argument, and find that there are genuine issues of material fact as this issue.  Plaintiff's Declaration states that he suffered from severe headaches as a result of Defendants' conduct.  (Pl.'s Decl. at 2 paragraph 3.)  The Tenth Circuit has indicated that headaches constitute "physical injury" within the meaning of the PLRA.  *Murray v. Edwards County Sheriff's Dep't*, 248 F. App'x 993, 995 (10th Cir. 2007).  The fact that the medical records do not reflect complaints of headaches by Plaintiff is an impeachment matter for trial, it does not overcome Plaintiff's Declaration.  Moreover, Plaintiff also complains of constipation, and bowel problems are noted in the AVCF medical screening record.  Accordingly, I deny Defendants' Motion for Summary Judgment as to Plaintiff's claim for compensatory damages.

Finally, I deny Defendants' Motion for Summary Judgment as to the claim for punitive damages.  Punitive damages may be available when the defendant's conduct

involves reckless or callous indifference to the federally protected rights of others.

*Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1120-21 (10th Cir. 2004).  As

discussed in connection with the due process claim, Plaintiff has alleged that

Defendants denied him access to the evidence against him and/or did not present any

evidence to substantiate the claims, did not allow him a reasonable opportunity to

respond to the allegations, and did not adjudicate his claims before non-biased hearing

officers.  I am unable to determine as a matter of law at this time that these actions

could not have been done in reckless or callous indifference to Plaintiff's rights.

III.     CONCLUSION

          Based upon the foregoing, it is

          ORDERED that Defendant's Motion for Summary Judgment (ECF No. 35) is

**GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** as to Plaintiff's claim for

a declaratory judgment and otherwise **DENIED**.

          Dated:  March 22, 2013

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Senior United States District Judge